E. L. EDGERLEY *vs.* MARY THOMPSON.

Somerset County.   Decided February 2, 1922.   This is an action brought by the plaintiff against the defendant for the recovery of damages upon the allegation that the plaintiff's horse was kicked by the defendant's horse and so injured that it had to be killed.   The plaintiff and the defendant were neighbors.   The defendant after one ·of the heavy storms of 1919 being short of hay and the roads being so blocked with snow that it was difficult to procure any, requested the plaintiff to take her horse into his stable, take care of it and feed it for·a short time until it was practicable to bring hay to her own barn.   It was understood that a fair compensation should be paid for keeping the horse.   It is evident, however, that the plaintiff did not consent to taking the horse for gain, but for the accommodation of his neighbor under the exigency brought about by the big storm.   The horse remained in the plaintiff's stable about eight days and on the very day that the defendant had made plans to take the horse to her own barn she kicked one of the plaintiff's horses and so injured him as to render him worthless.

The plaintiff's horse was hitched in a stall which was partitioned to the ceiling about half way back and then about four feet high to the back end of the stall.   A rope was stretched across the rear of the plaintiff's horse to prevent him from backing out beyond the stall.

The adjoining stall in which the defendant's horse was placed was a double one, and no rope was stretched across her stall. There is no question but that the defendant's mare kicked the plaintiff's horse and spoiled him. The plaintiff alleges that the defendant's mare was vicious to other horses and particularly in the tendency to kicking especially with one foot and that this vicious habit was known to the defendant and not communicated to him by her and that he had no knowledge that the mare was vicious in the respect named.

The record shows that the defendant when sending the mare to the plaintiff's farm, and her son-in-law when taking the mare there, both studiously refrained from any caution as to her previous habits. The defendant, to charge the plaintiff with knowledge of that vicious habit of the mare, now relies on two casual remarks made to the defendant during the preceding year, one by her stepson, the other by her son-in-law; both remarks were so casual in their character as probably to be forgotten by the hearer as soon as uttered; or if recalled, are too indefinite to charge the plaintiff with knowledge that the mare "might sometimes under certain circumstances kick other horses," to quote the brief statement of special matters in defense.

There is no question of law involved in the case and the issue of fact raised is whether the plaintiff had such knowledge of the vicious kicking habit of the defendant's mare, as should charge him with the duty of so disposing of her, in his stable as to prevent opportunity of contact with his own horse and to be regarded as guilty of such contributory negligence, in failing so to do, as to make the injury by kicking attributable to his own fault.

That the kicking habit of this mare was known to the defendant, was amply proven and not denied. Assuming for the purpose of briefly discussing the effect of the evidence that the defendant's witnesses did communicate to the plaintiff the information which they claim to have given him; it was then not sufficiently definite and explicit to warn him of the particular habit to which this horse was addicted. One witness said when they were working on the roads that he told the plaintiff he better put his horse on the pole. As near as he could recollect the conversation, when asked the reason by the plaintiff he said:

"Because sometimes she kicks as I have heard. I have never seen her kick."

And the reply of the plaintiff was:

"I guess she will be all right.    We will take the chances."

Now there are various kinds of kicking horses.    Some will kick in a wagon and no where else; some will kick in a stable and no where else; some will kick at another horse and on no other occasion; so that the mere statement that a horse may kick under one set of circumstances may convey little or no information that he will kick under other circumstances.  Consequently, the evidence of the witness that he better put his horse on the pole gave no particular evidence of information that that mare was accustomed to kick with one foot at another horse while in the stable.    The defendant testified that this mare was kind in all respects except her disposition to kick, and that she herself had never seen her kick.    On cross-examination she was asked these questions:

"Q.    You heard Mr. Jeffer's testimony this morning?"

"A.    Yes."

"Q.    Why did you tell Jeffer to look out for the horse and not send any word to Edgerley to look out for the horse?"

"A.    Because I thought everybody knew,—that is, that knew the horse; knew he kicked, I thought everybody knew that."

She further says that she did not tell Mr. Thompson with regard to the vicious habit of the horse.

She was finally asked:

"Q.    You didn't feel the necessity of acquainting Mr. Edgerley yourself with the habit of this horse, even after he had befriended you by taking this horse to keep?"

"A.    I didn't think it was necessary."

Upon this testimony of the defendant and her witnesses, we are of the opinion that the plaintiff did not receive such definite information with respect to the particular kicking habit of this horse as to reasonably charge him with knowledge that she would be dangerous to his horse, in view of the way they were placed together in the stalls. His horse could back but a very short distance beyond the end of the stall.    If this horse had been an ordinary kicker she would probably have done no harm.    The particular habit of kicking with one foot was what caused the mischief.    It was the bounden duty of the defendant to explicitly inform the plaintiff of the particular habit of the horse; her excuse for not doing so is trivial.

When however, we go further and consider the plaintiff's evidence and the circumstances and probabilities in corroboration of it, we are of the opinion that, while there is apparent conflict of the testimony, there is but little doubt, if any, as to the real weight and truth of the evidence.   It is easy for any person to assert or to deny but when such assertion or denial is contradicted by admitted facts that show them to be inherently incredible, the assertion or denial is mostly if not quite stripped of its value as evidence.   The plaintiff absolutely denied that he had any information whatever, with respect to the vicious kicking habit of this mare.   His statement is corroborated by the fact that he had in a stall a horse of the value of three hundred dollars and by the improbability that, without any precaution of safety whatever, he placed beside that horse a mare which he knew to be a kicker and liable at any moment to do injury to his own horse.   Such conduct would be contrary to the self-interests of the plaintiff and inherently improbable.   It cannot be assumed for a moment that he would have taken this mare for the accommodation of the defendant and placed her in such dangerous proximity to his own horse had he known or even suspected that she was a kicker. There is no reason why he should do it.   It was not a business transaction.   He was under no obligation to take the horse.   He would have been fully justified in saying had he known that this horse was a kicker that he must decline to take her on that account; that he could not for the accommodation of a neighbor jeopardize his own interests.   That is what any reasonable man of ordinary prudence would have said.

The evidence, probabilities and circumstances of the case, when viewed as a whole, are so overwhelmingly in support of the plaintiff's contention that we think a new trial should be granted.   Motion sustained.   New trial granted.   *James H. Thorne*, for plaintiff. *L. L. Walton*, for defendant.